UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JILL KRAWCZYSZYN, | ) | CASE NO. 1:21-cv-0085 |
| Plaintiff, | ) ) | |
| | ) | JUDGE BRIDGET M. BRENNAN |
| v. | ) ) | |
| COLUMBIAN LIFE INSURANCE COMPANY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) ) | |

Before this Court are Plaintiff's Motion for Partial Summary Judgment and Defendant's Cross-Motion for Summary Judgment. (Doc. Nos. 27 & 37.) Defendant filed a brief in opposition to Plaintiff's Motion for Summary Judgment, which was filed along with its Cross-Motion for Summary Judgment. (Doc. No. 37.) Plaintiff filed a Reply in Support of her Motion for Partial Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment. (Doc. No. 38.) For the reasons stated herein, this Court GRANTS Defendant's Cross-Motion for Summary Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment.[1] Accordingly, this case is dismissed.

I. **Background**

A. **Factual Background**

The material facts of this case are not in dispute.

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and there is a diversity of citizenship (Illinois & North Carolina).

1. *Kim and Jill Krawczyszyn*

Kim Krawczyszyn (the "Insured") was an independent insurance agent from 1989 to 2020. (Doc. No. 36-4 at PageID 611-23.) Throughout her approximately 31-year career, she sold life insurance for more than 75 insurance agencies. (*Id.*) On January 25, 2018, the Insured applied to become a life insurance agent with Columbian Life Insurance Company ("Columbian"), which Columbian approved on January 30, 2018. (Doc. No. 36-6 at PageID 628.) Within days of this appointment, the Insured purchased a Columbian life insurance policy for herself and named her sister, Plaintiff Jill Krawczyszyn, the beneficiary. (Doc. No. 27-3 at PageID 375.) On September 20, 2018, the Insured passed away. (Doc. No. 36-3 at PageID 575.) Plaintiff attempted to collect on the Insured's life insurance policy, but Columbian denied her claim after it investigated the information submitted on the life insurance application. (Doc. No. 27-5 at PageID 488.) Thereafter, Plaintiff initiated this suit. (Doc. No. 1.)

2. *Lake Health Urgent Care Visit*

On January 24, 2018, the Insured went to Lake Health Urgent Care West Medical Center ("Lake Health"). (Doc. No. 36-1 at PageID 557.) She informed Lake Health medical staff that she had been suffering from "abdominal pain, bloating, diarrhea, and vomiting since December 15, 2017." (*Id.*) Lake Health performed an abdominal x-ray and noted the following:

> FINDINGS: There is moderate dilation of small bowel loops in the midabdomen and upper pelvis but no dilation of large bowel. The possibility of partial distal small bowel obstruction cannot be ruled out although this could be due to distal iletis.
>
> IMPRESSION: Moderate nonspecific dilation of small bowel loops in the midabdomen but no dilation of colon, raising the possibility of a partial distal small bowel obstruction or due to ileitis.

(*Id.*) Lake Health also noted the following in its medical report:

> Epigastric pain, acute. Additional work-up required.
> Urinary tract infection, site not specified, acute. Additional work-up required.
> Ileus, unspecified, acute. Additional work-up required.

(*Id.* at PageID 560.) To treat these problems, Lake Health physicians prescribed Omeprazole ("for gastritis or prevention of gastritis") and Cipro. (*Id.*) At the time of discharge, Lake Health advised the Insured as follows:

> follow up with their Primary Care Physician (PCP) within 1 week. If symptoms worsen before PCP visit, call your PCP immediately for advice. If symptoms are severe, go to the nearest emergency room.
> SINCE PATIENT DID NOT WANT TO GO TO ER TONIGHT PATIENT WAS ADVISED TO GO TO ER WITHIN 24 HRS USING DULCOLAX SUPPOSITORY AND DRINKING ONLY SIPS OF GATORADE X24 HOURS DUE TO ILEUS SEEN ON ABDOMINAL XRAY.

(*Id.* (emphasis in original).) The record does not indicate that the Insured either contacted her Primary Care Physician or went to the emergency room for further treatment.

### 3. *Insured Applies to Work at Columbian and Executes Policy on Her Behalf*

The day after her Lake Health visit, the Insured applied to Columbian for authorization to sell its life insurance polies. (Doc. No. 36-6 at PageID 625.) On January 30, 2018, Columbian authorized the Insured to begin soliciting applications for Columbian life insurance policies as an independent contractor. (*Id.* at PageID 628.)

On January 31, 2018, the day after receiving this appointment, the Insured executed a Columbian life insurance policy for herself. (Doc. No. 27-3 at PageID 375.) The Insured signed the application as both the "Proposed Insured" and the "Licensed Agent." (*Id*. at PageID 377.) Of relevance here, the application required the applicant to answer the following questions:

> 5. Is any proposed insured awaiting a diagnosis or in the past five (5) years, been advised by a member of the medical profession to have a surgical operation, a diagnostic test (except for HIV), or a medical or mental

>> evaluation that has not been completed?
>
> 6. In the past five (5) years, has any proposed insured been prescribed medicine or taken any medication prescribed by a member of the medical profession or been hospitalized or consulted a physician or medical facility for any reason?

(*Id.* at PageID 376.)  The Insured responded "no" to Question 5.  (*Id.*)  The Insured answered "yes" to Question 6.  (*Id.*)  On the table below, which asked the applicant to provide more information if they responded "yes" to Question 6, the Insured disclosed that she was currently taking "Cipro" for a "mild infection."  (*Id.*)

The following admonition was included at the end of the application:

> **I have read the questions and answers in all parts of this application and agree that they are complete and true to the best of my knowledge and belief** . . ..  Any person who knowingly presents a false statement in an application of insurance may be guilty of a criminal offense and subject to penalties under state law.

(*Id.* at PageID 377 (emphasis in original).)  Directly below this acknowledgement, the Insured signed twice: first in her capacity as the applicant and second in her capacity as the insurance agent.  (*Id.*)

On February 12, 2018, Columbian approved the Insured's application and issued Policy No. 2021621389 (the "Policy") in the face amount of $250,000.  (Doc. No. 27-4 at PageID 383.)  The Policy advised applicants of a limited contestability period:

> **INCONTESTABILITY**
>
> We may not contest this Policy after it has been in force during the Insured's lifetime for two (2) years after the Date of Issue except for nonpayment of premium.

(*Id.* at PageID 390.)

### 4. *Cleveland Clinic Visit*

On February 1, 2018, the day after executing the insurance application, the Insured went to the Cleveland Clinic Emergency Room ("ER") for abdominal pain.  (Doc. No. 36-2 at

PageID 564-63.) At the ER, she stated that she felt as if she had "torpedoes moving through [her] stomach" for three days. (*Id.* at PageID 565.) The Insured also explained that – although she had abdominal pain for over a month, resulting in her only eating one meal per day – the last two days had been much worse, causing her not to eat or have a bowel movement. (*Id.* at PageID 567, 571-72.) She also explained that an internet search revealed that "she [had] all 10 symptoms of a bad appendix." (*Id.* at PageID 564.)

The medical report further indicated that the ER staff knew about her recent diagnosis at Lake Health and that she had not followed-up with a gastroenterologist. (*Id.*) The report further specified that she was previously given a "Dulcolax supp," which she stated caused her to "produce watery mucosy stools." (*Id.* at PageID 571.)

Ultimately, medical professionals determined that immediate surgery was necessary. (*Id.* at PageID 573.) After the surgery, she was diagnosed with a perforated colon and colon cancer. (*Id.*) On September 20, 2018, only eight months after receiving this diagnosis, the Insured died of colon cancer. (Doc. No. 36-3 at PageID 575.)

### 5. *Denial of Benefits*

Plaintiff submitted a claim to Columbian pursuant to the Policy. (*Id.* at PageID 576.) In response, Columbian initiated an investigation and discovered the medical history described above. (Doc. No. 27-5 at PageID 487-89.) Columbian then denied Plaintiff's request for payment and rescinded the plan. (*Id.* at PageID 488.) The denial and recission letter Columbian sent to Plaintiff stated Columbian's findings that the Insured made material misrepresentations in her responses to Questions 5 and 6, and that, had the proper disclosures been made, Columbian would have denied the Insured's application. (*Id.*; Doc. No. 36-3 at PageID 576.) In the letter, Columbian enclosed a check representing all the premium payments

that the Insured had made before her death. (Doc. No. 27-5 at PageID 488.) Columbian's recission occurred during the Policy's contestability period. (Doc. No. 27-4 at PageID 390.)

### B. Procedural Background

On January 1, 2018, Plaintiff initiated this action against Columbian. (Doc. No. 1.) After Columbian filed a motion to dismiss for failure to state a claim, Plaintiff filed her Amended Complaint. (Doc. Nos. 8 &12.) The Amended Complaint included four counts: declaratory judgment that the Policy was enforceable (Count I), breach of contract (Count II), promissory estoppel (Count III), and bad faith for failing to honor the terms of the Policy (Count IV). (*Id.*)

Columbian moved to dismiss Counts I and III of the Amended Complaint for failing to state cognizable claims. (Doc. No. 17.) Plaintiff opposed and Defendant submitted its reply. (Doc. Nos. 19 & 20.) The Court granted Columbian's motion as to Count I and denied its motion as to Count III. (Doc. No. 21.)

With only Counts II, III, and IV remaining, Plaintiff filed a Motion for Summary Judgment on Counts II & III. (Doc. No. 27.) Columbian, on the other hand, filed a Cross-Motion for Summary Judgment on all remaining Counts in the Amended Complaint. (Doc. No. 37.) Each party timely opposed the other party's motion. (Doc. Nos. 37 & 38.)

## II. Analysis

### A. Summary Judgment Standard

A motion for summary judgment must be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B)

showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id.* at 252.

Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). Put another way, the party opposing the motion for summary judgment must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."). Thus, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990); *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) ("A mere scintilla of

evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant." (cleaned up)). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

### B. Breach of Contract

Both Plaintiff and Columbian have moved for summary judgment on the breach of contract claim. When reviewing cross-motions for summary judgment, the court's analysis remains the same. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("It is true that both parties seek to resolve this case through the vehicle of cross-motions for summary judgment, but the standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."). The Court must draw all reasonable inferences in favor of the non-moving party and determine whether a genuine dispute of material fact exists. *See id.*

#### 1. *Overview of Analysis*

Under Ohio law,[2] to prevail on a breach of contract claim, the plaintiff must prove that the defendant breached a valid contract, and that he was harmed as a result of the defendant's breach. *Res. Title Agency, Inc. v. Morreale Real Est. Servs., Inc.*, 314 F. Supp. 2d 763, 769

---

[2] Both parties agree that Ohio law governs this dispute. The Restatement (Second) Conflicts of Law § 192 provides that the "validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for." The Restatement (Second) Conflicts of Law § 192. There is no choice-of-law provision in the life insurance contract, and the Insured was at all relevant times domiciled in Ohio. Accordingly, this Court will apply Ohio law. (Doc. No. 12 at PageID 162; Doc. No. 27-1 at PageID 348.)

(N.D. Ohio 2004). An insurance policy is a contract under Ohio law. *Lager v. Miller-Gonzalez*, 120 Ohio St. 3d 47, 896 N.E.2d 666, 669 (2008). Here, both parties acknowledge that the Policy was a valid, binding contract between Columbian and the Insured. Columbian asserts, however, that it was entitled to rescind the Policy. In support, Columbian cites Ohio Rev. Code § 3911.06, which states the conditions under which an insurer can rescind a life insurance policy. Plaintiff argues that Columbian cannot prove all the elements under Ohio Rev. Code § 3911.06 and, therefore, has breached the contract by refusing to comply with the Policy's terms.

Under Ohio Rev. Code § 3911.06, recission is permitted if four elements are established:

1. the applicant willfully gave a false answer on a life insurance application;
2. such answer was made fraudulently (i.e., willfully with intent to deceive);
3. but for such answer the policy would not have been issued; and
4. neither the insurer nor its agent had any knowledge of the falsity of such answer.

*Spencer v. Minnesota Life Ins. Co.*, 493 F. Supp. 2d 1035, 1037 (S.D. Ohio 2007) (citing *Jenkins v. Metropolitan Life Ins. Co.*, 171 Ohio St. 557, 173 N.E.2d 122, 125 (1961)). Columbian contends that the undisputed facts establish that it met all four recission elements. Plaintiff argues that Columbian cannot establish the first and second recission elements because any misstatements in the application were merely "honest mistakes," meaning they were not willful or fraudulent. *See Ramsey v. Penn Mut. Life Ins. Co.*, 787 F.3d 813, 821 (6th Cir. 2015). Plaintiff also argues that Columbian cannot establish the fourth element of recission because the Insured's dual role – that of applicant and agent – necessarily means that Columbian's agent knew of the false statements at the time the contract was created.

Presented with the parties' arguments and the undisputed material facts, the Court's

inquiry is simply this: did Columbian lawfully rescind the Policy under Ohio Rev. Code § 3911.06? For the reasons set forth below, Columbian's recission was lawful, and Plaintiff's breach of contract claim fails as a matter of law.

### 2. *Honest Mistake – Ohio Rev. Code § 3911.06 Elements One & Two*

Columbian's motion for summary judgment asserts that it has proven the first two recission elements because, when an insurance company demonstrates that an answer on an application is objectively false, like the Insured's responses to Questions 5 and 6, the insurance company has proven that the applicant's statements were "willful" and "fraudulent." *Spencer*, 493 F. Supp. 2d at 1038; *Ramsey*, 787 F.3d at 821; *Johnson v. Connecticut Gen. Life Ins. Co.*, 324 F. App'x 459, 467 (6th Cir. 2009); *Caccavale v. W. & S. Life Assur. Co.*, 2008-Ohio-825, No. 07CA009124, 2008 WL 555437, at *4 (Ohio Ct. App. 2008).

Plaintiff acknowledges that the Insured's answers were false, but asserts they were only "honest mistakes." Under Ohio law, if an applicant makes an "honest mistake," the insurance company cannot rescind the policy under Ohio Rev. Code § 3911.06 because the misstatements do not rise to the level of being willful or fraudulent. *Johnson*, 324 F. App'x at 467 ("When there is no evidence that the insured made an honest mistake, the insured's false statement will be deemed to have been willfully false and fraudulently made as a matter of law.").

In support of this assertion, Plaintiff directs the Court to two facts that she asserts prove the Insured's misstatements were mere "honest mistakes," but, even taken in a light most favorable to Plaintiff, neither of these facts establish that the Insured's misstatements were "honest mistakes."

First, Plaintiff describes her sister as an inexperienced insurance agent. (Doc. No. 27-1 at PageID 350.) To support this, Plaintiff notes that the Insured crossed out her name on the

first line of the application because she did not follow the written instruction requiring a person's name be written in the "Last, Middle Initial, First" format. (*Id.*) This argument fails because it is undisputed that the Insured had been an independent insurance agent since 1989 with appointments to sell insurance for more than 75 insurance companies. (Doc. No. 36-4 at PageID 611-23.) She simply was not an inexperienced agent. That the Insured crossed out her name on the form casts no doubt on this undisputed fact.[3]

Second, Plaintiff asks this Court to draw the inference that Plaintiff did not knowingly falsify her insurance application because – instead of omitting all the details of her visit to Lake Health – she disclosed that she was prescribed Cipro to treat a "mild infection." (Doc. No. 27-1 at PageID 350-51.) This is not a reasonable inference. If anything, her partial disclosure proves that Plaintiff was aware of her duty to disclose the full extent of her urgent care visit and consciously chose to deceive Columbian by only disclosing that she was prescribed one medication to treat a "mild infection." Even without omitting the Omeprazole prescription and the Lake Health instructions for her to seek additional testing related to her possible bowel obstruction, no reasonable jury could ever conclude that the Insured's labeling of her stomach problems as a "mild infection" was an "honest mistake" because the next day she was at the ER complaining of having severe stomach pain for three days – which she described as feeling like "torpedoes moving through [her] stomach" – and general abdominal pain for over a month that limited to her only one meal a day. (Doc. No. 36-2 at PageID 567, 571-72.)

The cases Plaintiff cites to support her "honest mistake" argument are not applicable here. In *Ramsey*, the insured actually disclosed his chronic illness on the application, which the

---

[3] Columbian correctly asserts that if this fact means anything, it proves that the Insured was mindful of the questions on the form she was filling out and could correct any mistakes – or misstatements – she caught herself making. (Doc. No. 30 at PageID 529.)

court held could lead to a reasonable finding that his omission of a medical complication related to the chronic illness was an "honest mistake" because he provided the insurance company with a general notice of the nature his health issues. 787 F.3d at 819-21. The court further found that the insured promptly corrected a misstatement he made on the original application through an amendment to the insurance policy. *Id.* In *Johnson*, the medical records did not support that the insured was ever diagnosed with the illness the insurance company claimed she had a duty to disclose. 324 F. App'x at 469. Thus, no misstatements were made to the insurance company. *See id.*

Accordingly, Columbian has satisfied recission elements one and two as a matter of law.

### 3. *Materiality – Ohio Rev. Code § 3911.06 Element Three*

Columbian submitted an affidavit stating that the omitted information was material because it would not have issued the Policy had Questions 5 and 6 been answered fully and truthfully. *See e.g., Caccavale*, 2008 WL 555437, at *4. Plaintiff has not contested that the information was material. *Long v. Time Ins. Co.*, 572 F. Supp. 2d 907, 914-17 (S.D. Ohio 2008) (finding that an uncontested affidavit submitted by an insurance company is enough to prevail on this element at the summary judgment stage). Thus, the Court finds that the information omitted and the statement made about only being treated for a mild infection were material misstatements.

### 4. *Columbian's Knowledge – Ohio Rev. Code § 3911.06 Element Four*

Both parties address the fourth recission element in their briefs, leaving the Court to determine whether an insured's dual role as the company's agent – and her use of this role to knowingly deprive the company of material information – precludes the company, as a matter of law, from rescinding a life insurance policy. It does not.

The fourth recission element provides that a life insurance company cannot rescind a policy due to an applicant's material misstatement unless "neither the insurer nor its agent had any knowledge of the falsity of such answer." *Spencer*, 493 F. Supp. at 1037; *see* Ohio Rev. Code § 3911.06.

While recognizing this element precludes recission where the insurer or the agent are aware of the false statements, Columbian asserts that, under Ohio law, an agent's knowledge of the insured's false statement does not prohibit the insurance company from rescinding its policy if the agent and the insured collude to knowingly provide false answers on an application. *John Hancock Mut. Life Ins. Co. v. Luzio*, 123 Ohio St. 616, 176 N.E. 446, 451 (1931) ("Under the instruction of the trial court the knowledge of any and every agent of the company would become the knowledge of the company, binding the company even if both agent and insured were defrauding the company.   In so charging the trial court erred."); *see also Dooley v. Acceleration Life Ins. Co.*, No. 9-94-9, 1994 WL 317993, at *3 (Ohio Ct. App. June 21, 1994) ("A duty of good faith on the part of the insured is essential if the company is to be bound; thus, if he connives with the agent to give false answers, for the purpose of defrauding the company, it will not be bound to the policy.   Under those circumstances, the false answer will not be the sole product of the company's agent; it will be the result of the collusion of the agent and the insured."); *Beard v. N.N. Invs. Ins. Co.,* 21 Ohio App. 3d 219, 486 N.E.2d 1255, 1256-57 (Ohio Ct. App. 1985) (same).

In her reply in support of her motion for partial summary judgement, Plaintiff argues that Columbian's focus on these cases is misguided and that the text of the statute controls.   She asserts that because the Insured was also Columbian's agent, Columbian knowingly approved the Policy based on material misrepresentations and cannot, as a matter of law, ever rescind the

Policy.

Plaintiff's argument fails because the Ohio Supreme Court has spoken on this issue and held that the insured could not collect on the policy, precluding Plaintiff's reading of Ohio Rev. Code § 3911.06. *See John Hancock*, 176 N.E. at 448; *see also In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) (noting that under the *Erie* Doctrine, federal courts sitting in diversity are "bound by the rulings of the state supreme court").

In *John Hancock*, the Ohio Supreme Court evaluated the recission statute[4] and held that an insurance company is not bound to a life insurance policy if the agent and the applicant collude to knowingly provide false answers on an application. 176 N.E. at 448 ("An applicant for life insurance should exercise towards the company the same good faith which he may rightfully demand from it; the relationship demands fair dealing. If it should be proven that the insured and the soliciting agent connived for the purpose of defrauding the company, there can be no recovery." (syllabus by the court)). Before announcing this point of law, the court acknowledged that the statute's plain language suggested that the agent's knowledge of the false statement is enough for the statute not to apply. *Id.* at 450 ("It will be noted that the last clause of this statute provides that no liability upon its policy it must be proven that the agent of the company had no knowledge of the falsity or fraud of the answer."). However, preventing the recission of contracts borne out of a fraudulent scheme between the insured and the agent would lead to an unacceptable result: the legislature and courts permitting and encouraging fraudulent

---

[4] In *John Hancock*, the court analyzed § 9391 of the General Code, which is the same statute as Ohio Rev. Code § 3911.06. 176 N.E. at 450.

conduct.[5]  *Id.*  ("Nor should legislative policy sanction, or court decision encourage, a scheme which would lead to the perpetration of a fraud upon the company by connivance of its soliciting agent and the insured.").

Plaintiff's assertion that the factual distinction here – that the insured and the agent were one and the same rather than two separate actors – is not a point in her favor and leads to the same impermissible result acknowledged in *John Hancock*.  *See id.*  Foreclosing recission when an individual acts as the applicant at the same time she is purporting to be the company's agent would authorize fraudulent conduct.[6]  *See id.*

---

[5] In *Pannunzio*, the Ohio Supreme Court revisited its decision in *John Hancock* and declined to extend *John Hancock*'s holding after the insurance company stipulated to the fact that its agent – without the knowledge of the Insured – knowingly provided false answers on the Insured's application. *Pannunzio v. Monumental Life Ins. Co.*, 168 Ohio St. 95, 151 N.E.2d 545, 548 (1958).  But the court also reaffirmed *John Hancock*'s holding that the Insured cannot collect on an insurance policy when he knowingly colludes with the agent to provide false answers on the application.  *Id.* at 552 ("[I]n the absence of proof that the applicant for insurance knew or should have known that the insurer was being deceived, the insurer is estopped from disclaiming liability on a subsequently issued policy by showing that its agent failed or neglected to disclose such information to it.").  Put simply, the *John Hancock* holding applies to these facts – rather than *Pannunzio* – because the Insured here knew of the false statements that the agent made on the application.  *See id.*; *see also Saunders v. Allstate Ins. Co.*, 168 Ohio St. 55, 151 N.E.2d 1, 5 (1958) (holding that – "in the absence of proof that an applicant knew or should have known that the insurer was being deceived" – an insurance agent's misstatements are imputable to the insurance company).  Importantly, Plaintiff does not contend that *John Hancock*'s holding regarding the agent and the applicant's collusion is no longer good law, nor has this Court found any reason to doubt that this case continues to be binding precedent.

[6] Additionally, Plaintiff directs the Court's attention to Ohio cases that deal with the scenario of when an agent makes a false statement on the insured's application without the insured's knowledge.  *Redden v. Const. Life Ins. Co.*, 172 Ohio St. 20, 173 N.E.2d 365, 367-68 (1961); *Long*, 572 F. Supp. 2d at 916.  Each one of these cases holds that the plaintiff cannot collect on the policy if the insured becomes aware of this misstatement and fails to notify the insurance company to correct the misstatement.  *Redden*, 173 N.E.2d at 367-68 ("The [insured] owed a duty to inquire and report the errors that he admitted discovering in the application of the insured, and his failure to do so is strong evidence supporting the claim that he was untruthful in answering questions on the application."); *Long*, 572 F. Supp. 2d at 916 ("In the event an insured provides a correct answer to the agent who records a false answer without the insured's knowledge, the insured has a duty to report the falsity upon discovery.").  Here, because the

### 5. *Summary*

To obtain summary judgment on her breach of contract claim, or to survive Columbian's motion on the same claim, Plaintiff must provide some evidence that Columbian had, in fact, breached the contract when it rescinded the agreement and denied coverage. That she did not do. The Insured, acting as both the applicant and a newly appointed agent for Columbian, engaged in a scheme and artifice to submit materially false information to Columbian in order to obtain a life insurance policy. And, for the reasons stated by the Ohio Supreme Court in *John Hancock*, recission was appropriate as a matter of law. Columbian did not breach the contract. Accordingly, the Court GRANTS Columbian's Cross-Motion for Summary Judgment on the breach of contract claim and DENIES Plaintiff's motion on this claim.

### B. Bad Faith

Because this Court has already determined that Columbian properly rescinded the contract under Ohio Rev. Code § 3911.06, the Court also finds that Columbian did not act in bad faith in failing to perform its duties under the Policy. *See eg., Long*, 572 F. Supp. 2d at 916-17 (holding that a finding that the insurance company properly rescinded the policy under Ohio Rev. Code § 3911.06 is also dispositive on a bad faith claim); *Loco v. Med. Sav. Ins. Co.*, 530 F.3d 442, 450-51 (6th Cir. 2008) ("In determining whether an insurer acted with the requisite good faith, a reviewing court must examine whether the insured had reasonable justification for taking the challenged action." (internal quotation marks omitted)). Accordingly, this Court GRANTS Columbian summary judgment on Count III and DENIES Plaintiff's motion on this

---

applicant and the agent were the same person, the applicant knew of any misstatements the moment the agent submitted them to the company. Accordingly, the Insured's failure to correct the misstatements provides another reason why Plaintiff cannot collect on the Policy. *See Redden*, 173 N.E.2d at 367-68; *Long*, 572 F. Supp. 2d at 916.

### C. Promissory Estoppel

Only Columbian moves for summary judgment on the promissory estoppel claim.

"In Ohio, where the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel." *O'Neill v. Kemper Ins. Companies*, 497 F.3d 578, 583 (6th Cir. 2007) (cleaned up) (internal quotation marks omitted). In *O'Neil*, the Sixth Circuit reasoned that promissory estoppel is not appropriate when there is a binding insurance agreement because a finding on the promissory estoppel claim would directly contradict the terms of the policy. *Id.* Here, it is undisputed that the Policy was an enforceable contract, and the parties are only arguing over whether Columbian can rescind the contract under the Policy's contestability clause. A finding that Columbian is liable under a promissory estoppel theory would directly contradict the terms of the Policy bargained for by Columbian and the Insured. *See id.* Accordingly, Plaintiff cannot mount a claim for promissory estoppel.

Notwithstanding, Plaintiff also cannot prove the necessary elements for a promissory estoppel claim. To survive summary judgment on her promissory estoppel claim, Plaintiff must introduce evidence showing "(1) a clear and unambiguous promise; (2) reliance on that promise; (3) reliance that was reasonable and foreseeable; and (4) damages caused by that reliance." *Current Source, Inc. v. Elyria City Sch. Dist.*, 157 Ohio App. 3d 765, 813 N.E.2d 730, 737 (Ohio Ct. App. 2004). Plaintiff has failed to put forth sufficient evidence to show that a reasonable jury could conclude that she could prevail on element two, the detrimental reliance prong. In *Talley*, the Ohio Supreme Court made clear that to succeed on a promissory estoppel claim in the context of an insurance dispute, the insured or the beneficiary must do more than simply allege that the insured detrimentally relied on the insurance company's promise by not applying for another insurance policy after agreeing to the terms of company's policy. *Talley v. Teamsters,*

*Chauffeurs, Warehousemen, & Helpers, Loc. No. 377*, 48 Ohio St. 2d 142, 357 N.E.2d 44, 47 (1976).   Notably, in her reply brief, Plaintiff does not offer any challenge to Columbian's arguments about the lack of record evidence showing detrimental reliance, let alone meet the requirements outlined in *Talley*.   See id.

Accordingly, the Court GRANTS Columbian summary judgment on Count IV.

### III.  Conclusion

For the reasons stated above, this Court GRANTS Defendant Columbian's Cross-Motion for Summary Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment. Accordingly, this case is dismissed.

**IT IS SO ORDERED.**

Date: May 26, 2022

BRIDGET M. BRENNAN
U.S. DISTRICT JUDGE